1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                       **FOR THE DISTRICT OF ARIZONA**

10

11   Sean Patrick Husband,                    No. CV 13-01320 PHX DLR (MEA)

12                    Petitioner,             **REPORT AND**
                                              **RECOMMENDATION**
13   v.

14   Charles L. Ryan, Arizona Attorney General,

15                    Respondents.

16

17   **TO THE HONORABLE DOUGLAS L. RAYES:**

18          Petitioner, who is pro se in this matter, docketed a petition seeking a writ of

19   habeas corpus pursuant to 42 U.S.C. § 2254 on July 1, 2013.  In an order issued

20   September 16, 2013, the Court granted Petitioner's motion for leave to proceed *in forma*

21   *pauperis* and ordered Respondents to answer the petition.  See Doc. 7.  On December 18,

22   2013, Petitioner docketed an amended petition.  See Doc. 15.  On December 20, 2013,

23   Respondents were ordered to answer the amended petition.  Respondents docketed an

24   answer to the amended petition for habeas corpus relief on February 25, 2014.  See Doc.

25   25 & Doc. 26.  The matter was reassigned on May 15, 2014.  Petitioner docketed a reply

26   (Doc. 40) to the response to his amended habeas petition on July 21, 2014.

27

28

## I Procedural background

A Maricopa County grand jury indictment returned November 28, 2005, charged Petitioner with three counts of sexual assault (Counts 1, 4, and 5), and three counts of sexual abuse (Counts 2, 3, and 6).  See Answer, Exh. A. The indictment alleged that Petitioner committed Counts 1, 2, and 3 against Meagan D. on or about August 17 and 18, 2004; Counts 4 and 5 against Stephanie K. on November 21, 2002; and Count 6 against Melissa A. on July 12, 2001.  Id., Exh. A.  On December 3, 2005, Petitioner informed the state court that he was not indigent and retained counsel entered an appearance on behalf of Petitioner.  Petitioner's retained counsel filed numerous pretrial motions on Petitioner's behalf.[1]

Respondents aver:

> During the final pretrial conference, the [state trial court judge]: (1) conducted an evidentiary hearing on Petitioner's motion to sever counts [see Answer, Exh. E] and denied the request for a separate trial for each victim...; (2) heard argument on and denied Petitioner's motion to dismiss Count 6 on due process grounds...; (3) denied the State's request to consolidate the instant case with CR 2006-106928, wherein Petitioner was charged with influencing a witness, in violation of A.R.S. §§ 13-2801 and 13-2802[2]...and (4) granted the State's motion in limine to preclude evidence

---

[1] Respondents represent these motions as:
(1) a motion for release of the grand jury transcript for trial preparation purposes []; (2) a motion to sever counts...[]; (3) a motion for production of results of the forensic tests performed on biological evidence taken from all three victims, as well as any recordings and transcripts of their police interviews []; (4) a motion to dismiss Count 6 (the sexual abuse charge involving Melissa A.) with prejudice, pursuant to the due process clauses of the United States and Arizona Constitutions, because "the State has destroyed the physical evidence…including clothes with possible trace evidence, a handwritten statement of the accuser, and the taped statement of the accuser," allegedly "after the police and prosecutors determined no crime had occurred" []; and (5) a motion "to release all physical evidence for testing," namely trace biological evidence that Sexual Assault Nurse Examiner ("SANE") [] had obtained from Meagan D.'s back [].
Answer at 3 (internal citations omitted).

[2] Respondents aver:
  Although Petitioner initially posted a bond of $180,000 to secure his release on the instant charges, the trial court subsequently revoked his pretrial release status

of the victims' sexual histories, pursuant to A.R.S. § 13-1421...

Id. at 3.

On November 28, 2006, the date set for Petitioner's trial, Petitioner moved, pro per, to replace his retained counsel and to continue his trial pending his retention of new counsel.  Id., Exh. B at Bates Stamp Number 00060.  A hearing on the motion was conducted that same day (id., Exh. F), during which Petitioner's trial counsel allowed that he had not acted as Petitioner had desired, that there was an "ongoing antagonistic relationship between what he thinks should be done, and what I believe should be done.  Some of it is material.  It doesn't go to ethical....If Mr. Husband wants to terminate me, that's fine with me.  I think in some ways that's to his advantage..."  Id., Exh. F at 4.  Counsel stated that he could represent Petitioner "to the best of my ability, but there are major differences that we have.  I think another attorney could represent Mr. Husband's interests better."  Id., Exh. F at 5.  Counsel stated that counsel and Petitioner had differed over the advisability of presenting additional witnesses and other strategic matters, and counsel indicated that Petitioner wanted further investigation before going to trial.  Id., Exh. F at 5.  Petitioner stated that he wished to retain different counsel, but that he had not identified who he wished to retain to represent him.  The motion to change counsel and to continue the trial was denied at the conclusion of the hearing.  Id., Exh. F.

Petitioner's jury trial began November 28, 2006.  All three victims testified at Petitioner's trial.  Id., Exh. H & I, Exh. J, Exh. K, Exh. M.  The jury was allowed to submit questions at the conclusion of each witness' testimony.  Petitioner testified as to his service in the United States military for eight years, including attending Officer Training School and an honorable discharge.  Id., Exh. M at 96-98.  Petitioner testified at

and ordered Petitioner held without bond after finding the "proof is evident and the presumption great" that Petitioner attempted to influence Meagan D's testimony by sending two men to her house to convey the threatening message that she should "forget what happened at the In and Out Burger," the scene of the misconduct underlying Counts 1-3 of the indictment. (Exhibit A: P.I., Item 20; Exhibit B: Items 21, 23, 24; Exhibit D: R.T. 3/23/06, at 27, 33-34.) Consequently, Petitioner remained incarcerated at the Maricopa County Jail during the remainder of the pretrial proceedings.
Answer at 4 n.1.  See also id., Exh. D (transcript of hearing regarding revocation of bond).

his trial that any sexual contact between Petitioner and the victims was consensual.  Id., Exh. M at 100-04, 109-115, 116-21 & Exh. N.  Petitioner testified that he had received what was referred to as a "confrontation call" from Melissa, which he later learned had been arranged by Detective Hall, who had also listened to the call.  Id., Exh. M at 113-15. The confrontation call was played for the jury and Petitioner acknowledged that a police-prepared transcript of the call appeared to be an accurate rendition of the call.  Id., Exh. N at 27-28.  All of the jury's questions at the conclusion of Petitioner's testimony involved the charges and testimony regarding Stephanie.  Id., Exh. N.  In addition to testifying, in his defense Petitioner presented character witnesses who testified on his behalf, including his sister-in-law, a friend who served with him in the military and was involved in a business venture with Petitioner, and a family friend who had known him since childhood.  Id., Exh. M at 72-96.  Each of these witnesses testified that Petitioner was an honest person and that Petitioner was respectful towards women.

The jury began deliberations on December 13, 2006, and the verdicts were returned on December 14, 2006.  Id., Exh. B & Exh. O.  On December 14, 2006, a hearing was conducted regarding questions submitted by the jury, which hearing was in the presence of the trial judge, Mr. Peterson for Mr. Freeman, Petitioner's trial counsel, and Mr. Trudgian for Ms. Baker, the prosecutor.  Mr. Peterson waived Petitioner's presence at the conference regarding the questions from the jury.  Id., Exh. O.  The first question was a request from the jury to see transcripts of a victim's statement and police reports—counsel agreed the only thing the jury could see while deliberating were the items already introduced into evidence.  Id. at 3-4.  The jury also asked if it could consider guilt based "solely on the description [of the crime] given when the charges were read," or if it could consider other physical acts which were testified to by the victims—the jury represented that it was "stuck" with regard to the charges concerning Melissa.  Id. at 5. Mr. Peterson noted that the jury appeared to be adding specificity to the charges in the indictment, which was read to the jury, when in fact the indictment did not contain that level of specificity.  Mr. Peterson agreed with the trial judge that the most appropriate way to answer the jury's question was to provide them with a copy of the

indictment with the class of crimes redacted.  Id. at 6-7.  The parties agreed that the appropriate answer to this question was to direct the jury to consider the evidence, the testimony, and their instructions, and that the jury would be provided a copy of the indictment.  Id. at 7.

The jury convicted Petitioner on the counts involving Meagan (Counts 1, 2 and 3) and Melissa (Count 6), and acquitted him on both charges involving Stephanie (Counts 4 and 5).  Id., Exh. A & Exh. B.  On February 2, 2007, after a hearing (id., Exh. P), Petitioner was sentenced to the presumptive term of seven years imprisonment pursuant to his conviction on Count 1 and to three concurrent terms of lifetime probation pursuant to his conviction on Counts 2, 3, and 6.  Id., Exh. A & Exh. B.[3]

Petitioner took a timely direct appeal of his convictions and sentences.   Petitioner retained private counsel to represent him in his direct appeal, in which he asserted:

> 1. The trial court committed structural error when it deprived [Petitioner] of his 6th and 14th Amendment right to counsel of choice.
> 2. The trial court deprived [Petitioner] of his right to a fair trial in violation of the Due Process Clause of the 14th Amendment when it denied his motion to sever counts.
> 3. The court deprived [Petitioner] of his right to a fair trial in violation of the Due Process Clause when it gave a [Rule] 404(c) instruction not for "other acts" but for the actual charges in the indictment.
> 4. Unauthorized and prejudicial [Rule] 404(c) evidence was improperly admitted and resulted in an unfair trial in violation of the 5th and 6th Amendments and the Due Process Clause of the 14th Amendment.
> 5. The jury was never instructed on clear and convincing evidence, allowing it to consider evidence of actual charged crimes without guidance of the 5th, 6th, and 14th Amendments.
> 6. The reasonable doubt instruction lowered the State's burden of proof in violation of the 5th and 14th Amendments, deprived [Petitioner] of his right to due process of law in violation of the 14th Amendment and Article II, § 4 of the Arizona Constitution, and his right to trial by jury in violation of the 6th and 14th Amendments and Article II, §§ 23 & 24 of the Arizona Constitution..
> 7. The trial court deprived [Petitioner] of his right to due process of law in violation of the 14th Amendment and Article II, § 4 of the Arizona

---

[3] Petitioner is still in custody pursuant to his conviction on the charge of witness tampering, for which he received a sentence of two years and three months imprisonment.

1    Constitution by failing to give the jury a Willits[4] instruction.

2

3    Id., Exh. Q.

4         The Arizona Court of Appeals affirmed Petitioner's convictions and sentences in a

5    decision issued September 4, 2008.  Id., Exh. T.  See also 2008 WL 4152841.  The

6    Arizona Supreme Court summarily denied review on February 10, 2009.  Id. Exh. W.

7         Petitioner initiated a timely action for state post-conviction relief pursuant to Rule

8    32, Arizona Rules of Criminal Procedure.  In his Rule 32 action, in which he was

9    represented by counsel, Petitioner argued that his trial counsel rendered ineffective

10   assistance of counsel "in violation of the 6th and 14th Amendments [of the United States

11   Constitution] and Article II, § 24 of the Arizona Constitution...."  Id., Exh. Y.  Petitioner

12   alleged his rights were violated because his counsel admitted he had not met with

13   Petitioner although he had conferred with him by phone, that he and Petitioner disagreed

14   about trial strategy, and that counsel stated another attorney could better represent

15   Petitioner.  Petitioner also argued his counsel's performance was deficient because

16   counsel failed to object to the trial court's Rule 404 "lack of finding", because counsel

17   "failed" to renew the motion to sever counts, because counsel "delegated" the

18   interviewing of witnesses and because counsel did not interview Detective Hall; because

19   counsel failed to object to the "clear and convincing" jury instruction; because counsel

20   failed to object to the "reasonable doubt" instruction; because counsel "failed to secure a

21   Willits instruction"; because counsel failed to "secure" a jury instruction with regard to

22   the weight to be afforded a police officer's testimony; because counsel was

23   simultaneously trying a case in Gila County and because counsel traveled to New York

24   before the jury returned a verdict and counsel was not present for the verdict ("counsel

25   jammed the presentation of the defense case" and "the verdict was taken" by substitute

26   counsel); and because counsel "failed to secure" the attendance of character witnesses.

27   Id., Exh. Y.

28

---

     [4] See Arizona v. Willits, 96 Ariz. 184, 393 P.2d 274 (1964) (involving the proper instruction to the jury when the defendant contends that the prosecution has lost or destroyed exculpatory evidence, allowing the jury to presume the evidence was exculpatory).

In a supplemental pleading Petitioner argued that he was denied his right to confront the witnesses against him because Petitioner's counsel was not allowed to cross-examine a victim-witness regarding a prior experience of alleged sexual assault.  The state filed a response brief.  The state trial court denied relief on May 21, 2010, summarily finding that Petitioner had failed to establish a colorable claim for relief based on the ineffective assistance of trial counsel and that Petitioner's claim regarding the cross-examination of a witness was precluded by the failure to raise the issue in his direct appeal.  Id., Exh. CC.

Petitioner appealed the trial court's decision regarding his ineffective assistance of counsel claims but did not seek review of the trial court's ruling that his confrontation-clause claim was precluded pursuant to Rule 32.2(a)(3), Arizona Rules of Criminal Procedure.  On March 28, 2012, the Arizona Court of Appeals summarily denied review of the trial court's decision denying state post-conviction relief.  Id., Exh. GG.  The Arizona Supreme Court summarily denied review on September 25, 2012.  Id., Exh. JJ

In his amended federal habeas petition Petitioner alleges the following bases for relief:

"Ground I Ineffective assistance of counsel: Cumulative prejudice"  Petitioner contends that he was "denied his counsel of choice" and that he was "forced to trial with admittedly deficient counsel," in violation of his 6th and 14th Amendment rights.

"Ground II Ineffective assistance of counsel.  Failure to interview or secure witnesses".

"Ground III Counsel chose to be absent at a critical stage due to a conflict".

"Ground IV Ineffective assistance of counsel Acquiescence to prosecutorial misconduct".

"Ground V Prosecutorial misconduct".

"Ground VI Counsel of choice violation".

"Ground VII Improper joinder Cumulative error".

"Ground 8 Jury instructions Lowered burden of proof".

Doc. 15 (Amended Petition).

Respondents contend that Petitioner did not properly exhaust some of his federal habeas claims in the state courts.  Respondents contend that Petitioner is not entitled to habeas relief on the merits of the claims which were properly exhausted.

**II Analysis**

**A. Exhaustion and procedural default**

Absent specific circumstances, the District Court may only grant federal habeas relief on the merits of a claim which has been "properly" exhausted in the state courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Coleman v. Thompson, 501 U.S. 722, 729–30, 111 S. Ct. 2546, 2554–55 (1991). To properly exhaust a federal habeas claim, the petitioner must afford the state courts the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner. See, e.g., Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v. Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005).

The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either in a direct appeal or in a petition for post-conviction relief.  See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999).  See also Date v. Schriro, 619 F. Supp. 2d 736, 762-63  (D. Ariz. 2008); Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007).

To satisfy the "fair presentment" prong of the exhaustion requirement, the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary."  Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001).  See also Woods v. Sinclair, 764 F.3d 1109, 1129 (9th Cir. 2014).  In Baldwin v. Reese, the Supreme Court reiterated that the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged constitutional errors.  See 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004). Therefore, if the petitioner did not present the federal habeas claim to the state court as asserting the violation of a specific federal constitutional right, as opposed to violation of a state law or a state procedural rule, the

1  federal habeas claim was not "fairly presented" to the state court. See, e.g., id., 541 U.S.
2  at 33, 124 S. Ct. at 1351.  See also Arrendondo v. Neven, 763 F.3d 1122, 1138 (9th Cir.
3  2014).

4          In order to fulfill exhaustion requirements, a petitioner must present to the state
5  courts the "substantial equivalent" of the claim presented in federal court.   Picard v.
6  Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 513–14 (1971); Dickens v. Ryan, 740 F.3d
7  1302, 1318-19 (9th Cir. 2014); Libberton v. Ryan, 583 F.3d 1147, 1164 (9th Cir. 2009).
8  Full and fair presentation requires a petitioner to present the substance of his claim to the
9  state courts, including a reference to a federal constitutional guarantee and a statement of
10 facts that entitle the petitioner to relief.   See Arrendondo, 763 F.3d at 1138; Scott v.
11 Schriro, 567 F.3d 573, 582 (9th Cir. 2009); Lopez v. Schriro, 491 F.3d 1029, 1040 (9th
12 Cir. 2007).  Although a habeas petitioner need not recite "book and verse on the federal
13 constitution" to fairly present a claim to the state courts, Picard, 404 U.S. at 277–78, 92
14 S. Ct. at 512–13, they must do more than present the facts necessary to support the
15 federal claim. See Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982).

16        In order to "fairly present" an issue to a state court, a petitioner must
17     "present the substance of his claim to the state courts, including a reference
       to a federal constitutional guarantee and a statement of facts that entitle the
18     petitioner to relief." Scott v. Schriro, 567 F.3d 573, 582 (9th Cir.2009). As
       a general matter, each "unrelated alleged instance [ ] of counsel's
19     ineffectiveness" is a separate claim for purposes of exhaustion. Moormann
       v. Schriro, 426 F.3d 1044, 1056 (9th Cir. 2005). In Moormann, for
20     example, we held that petitioner's claim that "counsel was ineffective for
21     failing to investigate and present a viable defense" did not fairly present the
       more specific claim that counsel was ineffective in "presenting the insanity
22     defense." Id. Thus, we recognized that while a petitioner who "presented a
23     particular claim" would not be barred from later "develop[ing] additional
       facts supporting that particular claim," it did not mean that "a petitioner
24     who presented any ineffective assistance of counsel claim below can later
25     add unrelated alleged instances of counsel's ineffectiveness to [that] claim."
       Id. at 1056; see also Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992)
26     (en banc) (holding that an ineffective assistance claim for failure to
       vigorously cross-examine a witness did not exhaust ineffective assistance
27     claims directed to other independent omissions by counsel).
28

- 9 -

Gulbrandson v. Ryan, 738 F.3d 976, 992 (9th Cir. 2013).

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts. See Woodford v. Ngo, 548 U.S. 81, 92–93, 126 S. Ct. 2378, 2387 (2006). If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim. See, e.g., id., 548 U.S. at 92, 126 S. Ct. at 2387.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims. See Castille, 489 U.S. at 351–52, 109 S. Ct. at 1060. Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594–95 (1991); Coleman v. Thompson, 501 U.S. 722, 727–28, 111 S. Ct. 2546, 2553–57(1991); Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002). "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'" Ellis v. Armenakis, 222 F.3d 627, 632 (9th Cir. 2000), quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).

In Arizona, claims not previously presented to the state courts in either a direct appeal or on collateral review in a Rule 32 action are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive Rule 32 action is permitted. See Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a) & (b) (successive petitions are limited to claims of being held in custody beyond sentence expiration, newly-discovered

material facts, requests for delayed appeal, significant change in the law retroactively applicable that would probably overturn conviction or sentence, and actual innocence); Spreitz v. Ryan, 617 F. Supp. 2d 887, 899–900 (D. Ariz. 2009) (describing Arizona's preclusion rule).

> For the procedural default rule to apply, "the application of the state procedural rule must provide an adequate and independent state law basis on which the state court can deny relief." Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003) (amended) (internal quotation marks and citations omitted). Arizona's waiver rules are independent and adequate bases for denying relief. Stewart v. Smith, 536 U.S. 856, 859–60, 122 S.Ct. 2578, [] (2002) (per curiam) (holding denials pursuant to Arizona waiver rules are independent of federal law); Ortiz v. Stewart, 149 F.3d 923, 931–32 (9th Cir. 1998) (finding Arizona waiver rule consistently and regularly applied).

Hurles v. Ryan, 752 F.3d 768, 780 (9th Cir. 2014), petition for cert. filed, 83 U.S.L.W. 3139 (No. 14-191 ) (Aug. 15, 2014).

To constitute an adequate and independent state procedural ground sufficient to support a state court's finding of procedural default, "a state rule must be clear, consistently applied, and well-established at the time of [the] petitioner's purported default." Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001).  See also Murray v. Schriro, 745 F.3d 984, 1015-16 (9th Cir. 2014)  A state rule is considered consistently applied and well-established if the state courts follow it in the "vast majority of cases." Scott, 567 F.3d at 580, quoting Dugger v. Adams, 489 U.S. 401, 417 n.6, 109 S. Ct. 1211, 1221 n.6 (1989).  Additionally, for the proffered state procedural bar to preclude the consideration of a habeas claim "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."  Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S. Ct. 2633, 2638–39 (1985).  See also Harris v. Reed, 489 U.S. 255, 261–62, 109 S. Ct. 1038, 1042 (1989).

> "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263, 109 S.Ct. 1038, [].... Sanders v. Cotton, 398 F.3d 572, 580 (7th Cir. 2005) (where the state appellate

court's discussion of waiver is intertwined with its merits analysis, the state court's decision does not rest on an independent and adequate state law ground) ....

Pole v. Randolph, 570 F.3d 922, 937 (7th Cir. 2009) (some internal citations and quotations omitted).  See also Scott, 567 F.3d at 581–82.

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims, which have been found to be consistently applied and well-established, bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claim not fairly presented to the Arizona Court of Appeals in his direct appeal or in his Rule 32 action.  See Hurles, 752 F.3d at 780; Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002).  See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002) (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the grounds of a procedural bar.

**B. Cause and prejudice**

The Court may consider the merits of a procedurally defaulted claim if the petitioner establishes cause for their procedural default and prejudice arising from that default. "Cause" is a legitimate excuse for the petitioner's procedural default of the claim and "prejudice" is actual harm resulting from the alleged constitutional violation.  See Clabourne v. Ryan, 745 F.3d 362, 375 (9th Cir. 2014); Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991).  Under the "cause" prong of this test, Petitioner bears the burden of establishing that some objective factor external to the defense impeded his compliance with Arizona's procedural rules.  See Moorman v. Schriro, 426 F.3d 1044, 1058 (9th Cir. 2005); Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998); Martinez–Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir. 1996).  To establish prejudice, the petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S.

152, 170, 102 S. Ct. 1584, 1595 (1982).   See also Correll v. Stewart, 137 F.3d 1404, 1415–16 (9th Cir. 1998).   The Ninth Circuit Court of Appeals has also stated that prejudice is established by a petitioner's "actual innocence."   See Vosgien v. Persson, 742 F.3d 1131, 1134-35 (9th Cir. 2014).   Generally, a petitioner's lack of legal expertise is not cause to excuse procedural default.   See, e.g., Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 908 (9th Cir. 1986).

To establish prejudice, the petitioner must show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting his criminal proceedings with constitutional violations.   See Vickers, 144 F.3d at 617; Correll, 137 F.3d at 1415–16.   Establishing prejudice requires a petitioner to prove that, "but for" the alleged constitutional violations, there is a reasonable probability he would not have been convicted of the same crimes. See Manning v. Foster, 224 F.3d 1129, 1135–36 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999). Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause.   See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982); Thomas, 945 F.2d at 1123 n.10.

A state criminal defendant does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings.   See, e.g., Pennsylvania v. Finley, 481 U.S. 551, 555,   107 S. Ct. 1990, 1993 (1987); Graves v. McEwen, 731 F.3d 876, 878 (9th Cir. 2013).   Accordingly, the general rule is that errors of counsel during a state post-conviction action cannot constitute "cause" to excuse the procedural default of a federal habeas claim.   See, e.g., Coleman, 501 U.S. at 752, 111 S. Ct. at 2565; Clabourne, 745 F.3d at 374.   However, the Supreme Court's opinion in Martinez v. Ryan, 132 S. Ct. 1309 (2012), established a limited exception to this general rule, which exception applies only to Sixth Amendment ineffective assistance of counsel claims.   Martinez held that inadequate assistance of post conviction counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315.   In Ha Van Nguyen v. Curry, 736 F.3d 1287, 1293 (9th Cir. 2013), the Ninth Circuit

expanded Martinez, holding that this doctrine can also apply to excuse the procedural default of claims asserting ineffective assistance of direct appeal counsel.

In Trevino v. Thaler, the Supreme Court delineated the Martinez analysis as consisting of four prongs:

> We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

133 S. Ct. 1911, 1918 (2013), citing Martinez, 132 S. Ct. at 1318–19, 1320–21 (alterations in original).

The first prong of this test requires a petitioner seeking to rely on Martinez to bring forward facts demonstrating that his underlying ineffective assistance of trial or appellate counsel claim is substantial. The Supreme Court has defined "substantial" as a claim that "has some merit." Martinez, 132 S. Ct. at 1318.  Stated inversely, a claim is "insubstantial" if "it does not have any merit or ... is wholly without factual support." Id. at 1319. Determining whether an ineffective assistance of counsel claim is substantial requires the Court to examine the claim under the standard stated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). A petitioner asserting ineffective assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." Id., 466 U.S. at 687, 104 S. Ct. at 2064.  Additionally, not just any error or omission of counsel will be deemed "deficient performance" that will satisfy Martinez; if post-conviction counsel "in the initial-review collateral proceeding did not perform below constitutional standards," that attorney's performance does not constitute "cause." 132 S. Ct. at 1319.  Most notably, counsel "is not necessarily ineffective for failing to raise even

- 14 -

a <u>non-frivolous</u> claim," much less a frivolous claim.   <u>Sexton v. Cozner</u>, 679 F.3d 1150, 1157 (9th Cir. 2012) (emphasis added).

## C. Fundamental miscarriage of justice

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice.  <u>See</u> <u>Dretke v. Haley</u>, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); <u>Schlup v. Delo</u>, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); <u>Murray v. Carrier</u>, 477 U.S. 478, 485–86, 106 S. Ct. 2639, 2649 (1986).  A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent. <u>See</u> <u>Murray</u>, 477 U.S. at 485–86, 106 S. Ct. at 2649; <u>Thomas v. Goldsmith</u>, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged.  <u>See</u> <u>Dretke</u>, 541 U.S. at 393, 124 S. Ct. at 1852; <u>Wildman v. Johnson</u>, 261 F.3d 832, 842–43 (9th Cir. 2001).

## D. Standard of review of exhausted claims

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law or the state court decision was an unreasonable application of clearly established federal law.  <u>See</u> 28 U.S.C. § 2254(d); <u>Carey v. Musladin</u>, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); <u>Musladin v. Lamarque</u>, 555 F.3d 834, 838 (9th Cir. 2009).  "Under AEDPA, a federal court may not grant a petition for a writ of habeas corpus unless the state court's adjudication on the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1390 (2012), <u>quoting</u> 28 U.S.C. § 2254(d)(1).

A state court applies a clearly established standard unreasonably only if no "reasonable interpretation of the controlling [Supreme Court] standard" can

"support [the state court's] legal ruling." Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, [] (2007). So, when evaluating the reasonableness of a state court's application of a general standard, we must defer to any "principled reason for the state court to distinguish between the case before it and Supreme Court precedent." Murdoch v. Castro, 609 F.3d 983, 992 (9th Cir. 2010) (en banc). Moreover, § 2254(d)(1), the Supreme Court recently explained,

> does not require state courts to extend [a Supreme Court] precedent or license federal courts to treat the failure to do so as error. Thus, "if a habeas court must extend a rationale before it can apply to the facts at hand," then by definition the rationale was not "clearly established at the time of the state-court decision." AEDPA's carefully constructed framework "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law."

White, 134 S.Ct. at 1706 (internal citations omitted) (quoting Yarborough, 541 U.S. at 666, 124 S.Ct. 2140).

Arrendondo, 763 F.3d at 1133-34.

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement." Harrington v. Richter, [] 131 S.Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." Id., at ——, 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. Id., at ——, 131 S.Ct., at 786 (internal quotation marks omitted).

Burt v. Titlow, 134 S.Ct. 10, 15-16 (2013).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law as stated in *United States Supreme Court opinions*, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result.  See, e.g., Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); Soto v. Ryan, 760 F.3d 947, 957 (9th Cir. 2014); Runningeagle v. Ryan, 686 F.3d

758, 785 (9th Cir. 2012), cert. denied, 133 S. Ct. 2766 (2013).

> The "only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision." Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, [] (2003). If Supreme Court "cases give no clear answer to the question presented, ... it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126, 128 S.Ct. 743, [] (2008) (internal quotation marks omitted). In other words, "'[i]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court].'" Richter, 131 S.Ct. at 786 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S.Ct. 1411, [] (2009)).

McKinney v. Ryan, 730 F.3d 903, 909 (9th Cir. 2013).

> To satisfy the "unreasonable application" portion of the first prong, the petitioner must demonstrate that the state court's application of Supreme Court precedent to the facts of his case was not only incorrect but "objectively unreasonable." Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 360 (2002). "While Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as 'persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law.'" Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002) (quoting Van Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir. 2000)...[]

Davis v. Woodford, 384 F.3d 628, 637-38 (9th Cir. 2004).  See also Woods, 764 F.3d at 1121.

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. See McNeal v. Adams, 623 F.3d 1283, 1287–88 (9th Cir. 2010). The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should

- 17 -

have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000). See also Cheney v. Washington, 614 F.3d 987, 994 (9th Cir. 2010). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. See, e.g., Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010); Runningeagle, 686 F.3d at 785. An unreasonable application of law is different from an incorrect one. See Renico, 130 S. Ct. at 1862; Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005). "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case." Adamson v. Cathel, 633 F.3d 248, 255–56 (3d Cir. 2011). See also Howard v. Clark, 608 F.3d 563, 567–68 (9th Cir. 2010).

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Miller–El v. Dretke, 545 U.S. 231, 240–41, 125 S. Ct. 2317, 2325 (2005); Miller–El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); Runningeagle, 686 F.3d at 763 n.1; Crittenden v. Ayers, 624 F.3d 943, 950 (9th Cir. 2010); Stenson, 504 F.3d at 881; Anderson v. Terhune, 467 F.3d 1208, 1212 (9th Cir. 2006). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304–05 (1982). Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). See also Murray v. Schriro, 745 F.3d at 998.

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. See

- 18 -

1   <u>Lafler</u>, 132 S. Ct. 1389-90; <u>Panetti v. Quarterman</u>, 551 U.S. 930, 953–54, 127 S. Ct.

2   2842, 2858–59 (2007); <u>Runningeagle</u>, 686 F.3d at 785-86; <u>Greenway v. Schriro</u>, 653 F.3d

3   790, 805–06 (9th Cir. 2011).

4        **E. Petitioner's claims for relief**

5        **1.    Petitioner's first and sixth habeas claims assert that his federal**
**constitutional rights were violated by the trial court's denial of Petitioner's motion**
6   **seeking to postpone his trial while he obtained different retained counsel because**
**Petitioner felt his current retained could not adequately represent him due,** ***inter***
7   ***alia*****, to counsel's concurrent trial in a different county.**

8

9        In his direct appeal Petitioner asserted that the trial court committed structural

10  error when it deprived him of his 6th and 14th Amendment right to the defense counsel of

11  his choice, citing <u>United States v. Gonzalez Lopez</u>, 548 U.S. 140, 144, 126 S. Ct. 2557,

12  2561 (2006).  The Arizona Court of Appeals denied this claim, finding the trial court had

13  properly balanced Petitioner's desire to counsel of his choosing and the fair and

14  expedient administration of justice.  Distinguishing <u>Gonzalez Lopez</u>, the Arizona Court

15  of Appeals noted Petitioner made the request to change counsel at the time set for trial

16  when the witnesses were present and prepared to testify and a jury voir dire panel was

17  waiting outside chambers.   The appellate court further noted that Petitioner had not

18  retained or identified alternative counsel, that Petitioner's counsel had represented

19  Petitioner in pretrial proceedings, and that Petitioner's counsel represented to the trial

20  court that he was prepared to proceed to trial and counsel felt that he could adequately

21  represent Petitioner.  <u>See</u> Answer, Exh. T.

22       The Arizona Court of Appeals' decision denying this claim was not clearly

23  contrary to nor an unreasonable application of federal law.  <u>See</u>, <u>e.g.</u>, <u>Miller v. Blacketter</u>,

24  525 F.3d 890, 896-97 (9th Cir. 2008)[5].

25  _____

26       [5]

27       First, at the time [defense counsel] moved to withdraw and to postpone trial, [the
         defendant] had not yet retained another attorney to take her place. In <u>Gonzalez-</u>
28       <u>Lopez</u>, the Supreme Court accepted the government's concession that a trial court
         wrongfully denied a defendant the right to counsel of choice where the court
         refused to grant pro hac vice admission to an attorney the defendant hired who

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to have the Assistance of Counsel for his defence." We have previously held that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him.... The Government here agrees, as it has previously, that "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds".... To be sure, the right to counsel of choice "is circumscribed in several important respects." Wheat, supra, at 159, 108 S.Ct. 1692.

Gonzalez Lopez, 548 U.S. at 144, 126 S.Ct. at 2561 (some internal citations and quotations omitted).

A defendant does not have a right to retained counsel of their choosing regardless of the surrounding circumstances.  To establish a Sixth Amendment violation based on the denial of a motion to continue predicated on a desire to change counsel, a petitioner must show that the trial court abused its discretion by an "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'"  Morris v. Slappy, 461 U.S. 1, 11-12, 103 S.Ct. 1610, 1616 (1983), quoting Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849 (1964).

Petitioner's reason for wishing to change counsel, i.e., that counsel had not consulted with Petitioner to the extent Petitioner desired and that counsel and Petitioner differed as to strategic choices in offering Petitioner's defense, were not appropriate bases for staying the trial to allow Petitioner to find new counsel.  Additionally, counsel

---

was willing and prepared to begin representation immediately....
In this case, however, [the defendant] sought a thirty-day continuance during which he hoped to search for and to retain a new lawyer with the funds his father had belatedly offered to provide. At the time of the motions, no such attorney had been retained....Moreover, it was unclear how much time a new attorney, once hired, would have needed to prepare for...trial....
Second, the trial judge reasonably concluded that [defense counsel] was sufficiently prepared for trial. Under our precedents, the trial judge had a duty to inquire into the problems between [counsel and defendant] when they were first raised. [] The judge conducted such an inquiry, affording both...an opportunity to explain the cause of [the defendant's] dissatisfaction.

filed and argued numerous pre-trial motions and ably defended Petitioner at trial, including thorough cross-examination of witnesses—there is no indication from the record in this matter that counsel was unprepared or that Petitioner was actually prejudiced by counsel's performance.  The Court notes that Petitioner was acquitted of the charges involving one of the victims.  Even allowing that counsel agreed that Petitioner and counsel did not have a good relationship:

> Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. See Chambers v. Maroney, 399 U.S. 42, 53–54, 90 S.Ct. 1975, 1982–1983[] (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, [](1964).

Morris, 461 U.S. at 11-12, 103 S. Ct. at 1616.

The federal courts have consistently limited the conclusion in Gonzalez Lopez to its facts, including the fact that, in that matter, the trial court had erroneously disqualified the defendant's preferred counsel.

> A trial court's decision to grant or deny a continuance is a matter of discretion. ...As we held in Powell v. Collins, "[a]bsent proof of a violation of a specific constitutional protection, a habeas petitioner must show that a trial error was so egregious as to deprive him of a fundamentally fair adjudication, thus violating constitutional principles of due process." 332 F.3d 376, 396 (6th Cir. 2003) ...The denial of a continuance constitutes a constitutional violation only when there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'...." Morris v. Slappy, 461 U.S. 1, 11-12, 103 S.Ct. 1610, [] (1983) (quoting Ungar, 376 U.S. at 589, 84 S.Ct. 841). As Morris and Ungar indicate, the denial of a continuance will rarely give rise to a constitutional violation and "[t]he circumstances of a particular case determine whether the denial of a continuance is so arbitrary as to violate due process." Burton v. Renico, 391 F.3d 764, 773 (6th Cir. 2004) (citing Ungar, 376 U.S. at 589, 84 S.Ct. 841). In addition, "[t]o demonstrate reversible error, the

defendant must show that the denial resulted in actual prejudice to his defense." United States v. King, 127 F.3d 483, 487 (6th Cir. 1997) (internal quotation marks and citation omitted). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefited the defense." Powell, 332 F.3d at 396.

    The relevant factors in determining whether a continuance was properly denied include: (1) the length of the requested delay; (2) whether other continuances had been requested and granted; (3) whether the delay was for legitimate reasons; (4) the inconvenience to the parties, witnesses, counsel, and the court; (5) whether the defendant contributed to the circumstances giving rise to the request; (6) whether denying the continuance resulted in prejudice to the defendant; and (7) the complexity of the case.

Landrum v. Mitchell, 625 F.3d 905, 927-28 (6th Cir. 2010) (some internal citations omitted)

The record supports the state court's conclusion that the trial judge acted within his broad discretion in denying [the petitioner's] motion for a continuance to retain counsel. Specifically, he confirmed that counsel was able to proceed to trial, evaluated [the petitioner's] diligence in timely retaining private counsel, and weighed the potential impact a continuance may have had on the victims and witnesses. The continuance was sought just four days before trial was scheduled to begin. See Slappy, 461 U.S. at 13-15, 103 S.Ct. 1610 (acknowledging that appropriate factors to consider include administration of justice, difficulty in assembling witnesses, bad faith delaying tactics, victims' concerns). Moreover, the motion to continue was based solely on [the petitioner's] desire to retain counsel because he was unsatisfied with his public defender's preparation for trial, not on any potential conflict of interest. Indeed, the potential conflict was not discovered until after the motion to continue was denied. Accordingly, the Nevada Supreme Court's application of Slappy and denial of relief on this claim was not "objectively unreasonable." See 28 U.S.C. § 2254(d)(1); Andrade, 538 U.S. at 75, 123 S.Ct. 1166.

Houston v. Schomig 533 F.3d 1076, 1079-80 (9th Cir. 2008).

    Because the state courts' determination that Petitioner's federal constitutional rights were not violated by the denial of Petitioner's motion to continue his trial to retain different counsel was not clearly contrary to nor an unreasonable application of federal law, Petitioner is not entitled to relief on this claim.

**2. Petitioner contends he was denied his right to the effective assistance of counsel (Amended Petition at 8-9)**

Petitioner's second, third, and fourth claims for federal habeas relief are claims that he was denied his right to the effective assistance of counsel:

Petitioner raised numerous ineffective assistance of counsel claims in his state action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure.   The state responded to each claim on the merits.   The state trial court summarily denied relief and the Arizona Court of Appeals summarily denied review of the trial court's decision.   In denying relief in Petitioner's Rule 32 action, the state trial court found: "With respect to claim (1), ineffective assistance of counsel, the Court has considered each of the Defendant's arguments and the State's responses.  The Court finds that none of Defendant's arguments raise a colorable claim for relief."  Answer, Exh. CC.  The state court's conclusion was not contrary to nor an unreasonable application of federal law.

To state a claim for ineffective assistance of counsel, a habeas petitioner must show both that his attorney's performance was deficient and that the deficiency prejudiced the outcome of his criminal proceedings.  See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  The petitioner must overcome the strong presumption that counsel's conduct was within the range of reasonable professional assistance required of attorneys in that circumstance.  See id., 466 U.S. at 687, 104 S. Ct. at 2064.  Counsel's performance will be held constitutionally deficient only if the habeas petitioner proves counsel's actions "fell below an objective standard of reasonableness," as measured by "prevailing professional norms." Strickland, 466 U.S. at 688, 104 S. Ct. at 2064-65.  See also Cheney v. Washington, 614 F.3d 987, 994–95 (9th Cir. 2010).

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

1    Amendment.

2

3    <u>Premo v. Moore</u>, 131 S. Ct. 733, 739 (2011) (internal citations and quotations omitted),
     <u>citing</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 131 S.Ct. 770, 788 (2011).

4        To establish prejudice, the petitioner must establish that there is "a reasonable
5    probability that, but for counsel's unprofessional errors, the result of the proceeding
6    would have been different." <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068. <u>See</u> <u>also</u>,
7    <u>e.g.</u>, <u>Cheney</u>, 614 F.3d at 994. To succeed on an assertion his counsel's performance was
8    deficient because counsel failed to raise a particular argument, the petitioner must
9    establish the argument was likely to be successful, thereby establishing that he was
10   prejudiced by his counsel's omission. <u>See</u> <u>Tanner v. McDaniel</u>, 493 F.3d 1135, 1144 (9th
11   Cir. 2007); <u>Weaver v. Palmateer</u>, 455 F.3d 958, 970 (9th Cir. 2006). Accordingly,
12   counsel's performance is not deficient nor prejudicial when counsel "fails" to raise an
13   argument that counsel reasonably believes would be futile. <u>See</u> <u>Premo</u>, 131 S. Ct. at 741;
14   <u>Harrington</u>, 131 S. Ct. at 788.

15       Additionally, it is Petitioner's burden to establish both that his counsel's
16   performance was deficient and that he was prejudiced thereby. <u>See</u>, <u>e.g.</u>, <u>Wong v.</u>
17   <u>Belmontes</u>, 558 U.S. 15, 16-17, 130 S. Ct. 383, 384-85 (2009). "It is not enough for the
18   defendant to show that the errors had some conceivable effect on the outcome of the
19   proceeding." <u>Strickland</u>, 466 U.S. at 693, 104 S. Ct. at 2067. "Surmounting <u>Strickland</u>'s
20   high bar is never an easy task." <u>Padilla v. Kentucky</u>, 555 U.S. 356, 371-72, 130 S. Ct.
21   1473, 1485 (2010), <u>quoted</u> <u>in</u> <u>Harrington</u>, 131 S. Ct. at 788.

22       Counsel is constitutionally deficient if the representation "fell below an
23       objective standard of reasonableness" such that it was outside "the range of
         competence demanded of attorneys in criminal cases." <u>Id.</u> at 687–88, 104
24       S.Ct. 2052 (internal quotation marks omitted). "Judicial scrutiny of
         counsel's performance must be highly deferential," and we must guard
25       against the temptation "to second-guess counsel's assistance after
         conviction or adverse sentence." <u>Id.</u> at 689, 104 S.Ct. 2052. Instead, we
26       must make every effort "to eliminate the distorting effects of hindsight, to
27       reconstruct the circumstances of counsel's challenged conduct, and to
         evaluate the conduct from counsel's perspective at the time." <u>Id.</u>; <u>see</u> <u>also</u>
28       <u>Harrington v. Richter</u>, [] 131 S.Ct. 770, 789, [] (2011). Because of the

difficulties inherent in fairly evaluating counsel's performance, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. This presumption of reasonableness means that not only do we "give the attorneys the benefit of the doubt," we must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, [] 131 S.Ct. 1388, 1407, [] (2011) (internal quotation marks and alterations omitted).

  To establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Under this standard, we ask "whether it is 'reasonably likely' the result would have been different." Harrington, 131 S.Ct. at 792 (quoting Strickland, 466 U.S. at 696, 104 S.Ct. 2052). That is, only when "[t]he likelihood of a different result [is] substantial, not just conceivable," id., has the defendant met Strickland's demand that defense errors were "so serious as to deprive the defendant of a fair trial," id. at 787–88 (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052).

  Under AEDPA, we do not apply the Strickland standard de novo. Rather, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Harrington, 131 S.Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id. *"[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, [] (2009). Deference to a state court's determination that counsel's performance was not deficient requires us to ask "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S.Ct. at 788. Deference to a state court's conclusion that any deficiency did not result in prejudice requires us to ask whether such a determination by the state court "would be unreasonable." Premo v. Moore, [] 131 S.Ct. 733, 744, [] (2011); see also Harrington, 131 S.Ct. at 792 (holding that "[i]t would not have been unreasonable" for the state court to conclude that the petitioner's evidence of prejudice did not make it "reasonably likely" that the result would have been different).*

Gulbrandson, 738 F.3d at 988-89.

  With regard to Petitioner's claim that his counsel's performance was unconstitutionally ineffective because counsel was not present and substitute counsel waived Petitioner's presence when questions from the deliberating jury were submitted,

Respondents assert Petitioner raised this claim, i.e. counsel's "absence" during jury deliberations, which responsibility was "turned over" to a deputy public defender, at page 22 of Petitioner's Rule 32 memorandum at Exhibit Y to the Answer to the petition.

Petitioner was represented by counsel in his Rule 32 proceeding.  At page 22 of Exhibit Y, the memorandum discusses Petitioner's trial counsel's ineffectiveness because counsel "jamm[ed]" the defense and because counsel traveled back and forth to Globe during Petitioner's trial, and asserts that counsel's performance was also deficient and Petitioner's defense was compromised because counsel was not present when the verdict was *read* and because substitute counsel took the verdict—this section of the memorandum does not discuss or mention that counsel was not present when the deliberating jury submitted questions or when the appropriate resolution of the jury questions was discussed.  In the Rule 32 memorandum Petitioner's counsel cites Exhibit 14 to that memorandum with regard to the allegation of ineffective assistance—which exhibit is a transcript of a trial conference between counsel and the trial judge about length of time defense counsel required to present the defense, including counsel's statement that he did not expect Petitioner to testify.  During this conference defense counsel indicated he had to be in New York on Saturday and that he was unable to travel on Friday and, accordingly, that he would be unavailable after the jury retired to deliberate on Thursday afternoon.  The memorandum does not attach any portion of the transcript dealing with the jury questions.  Accordingly, it is arguable if the precise question regarding counsel's unavailability at the time of the jury questions was indeed exhausted in the state courts.

With regard the merits of the claim, the two questions submitted by the jury, resulting in a conference at which Petitioner's presence was waived by his counsel, i.e., trial counsel's substitute, the two questions were answered by the jury being referred to the exhibits, testimony, and jury instructions, and did not result in the jury being given substantive information or instructions as to questions of law or how to proceed in deliberations.  Accordingly, to the extent this issue can be considered properly exhausted in the state courts, the state court's conclusion that Petitioner's counsel was not

- 26 -

unconstitutionally ineffective was not clearly contrary to nor an unreasonable application of federal law.  To the extent the issue was not exhausted, there is no prejudice arising from any procedural default of the claim because Petitioner's constitutional right to the effective assistance of counsel, throughout his trial and with regard to the answering of the jury question, was not violated.

Petitioner was not deprived of counsel altogether, i.e., a "Cronic" violation, nor was he denied the effective assistance of counsel at the time the trial court considered the jury questions.   There is no Supreme Court authority establishing that a judge's communication with a jury during deliberations constitutes a "critical stage." <u>Musladin v. Lamarque</u>, 555 F.3d 830 (9th Cir. 2009). The Ninth Circuit has rejected the argument that "answering a jury question or request without first consulting defendant's counsel is structural error always requiring reversal." <u>United States v. Mohsen</u>, 587 F.3d 1028, 1031 (9th Cir. 2009). Instead, harmless error review applies. <u>See</u> <u>United States v. Rosales–Rodriguez</u>, 289 F.3d 1106, 1110 (9th Cir. 2002) (applying harmless error analysis to a trial judge's ex parte unsolicited note to the jury with a supplemental instruction regarding the substitution of an alternate juror).  In applying the harmless error test, the Ninth Circuit in <u>United States v. Frazin</u>, 780 F.2d 1461, 1470-71 (9th Cir. 1986) identified three relevant factors: the probable effect of the message actually sent, the likelihood that the court would have sent a different message had it consulted with defense counsel beforehand, and whether any changes in the message that appellants might have obtained would have affected the verdict in any way. Based on these factors it is clear that Petitioner was not harmed by substitute counsel's presence, rather than trial counsel's presence, at this stage in the proceeding.  The only response to the jury question was to refer the jurors back to the instructions. There is no reasonable probability that defense counsel, if present, could have offered a different response to the question, let alone a response that would have affected the verdict.

Having thoroughly reviewed Petitioner's allegations regarding his counsel's performance at trial and sentencing and the transcripts provided by Respondents and having thoroughly considered Respondents' very thorough arguments with regard to

Petitioner's allegations of ineffective assistance of counsel, the state court did not err in determining that Petitioner's counsel's performance was not deficient and that Petitioner was not prejudiced by counsel's performance. Accordingly, Petitioner is not entitled to relief on the merits of this claim.

### 3.   Petitioner contends his right to due process of law was violated by prosecutorial misconduct.

In his Amended Petition (Doc. 15), Petitioner contends the Maricopa County Attorney's office violated his right to an impartial tribunal by removing a judge, by charging him under a racketeering statute, and by charging him with multiple felonies. Petitioner also alleges prosecutorial misconduct in the form of destruction of evidence, the late disclosure and suppression of relevant evidence, and material misrepresentations to the judge and jury by the prosecutor. Petitioner also asserts the prosecutor engaged in misconduct by testifying to the jury that Petitioner was a liar, and that the prosecutor repeated hearsay evidence that Petitioner had raped an under-age girl. Petitioner also contends the prosecutor engaged in misconduct by allowing questions asked by the deliberating jury to be answered without Petitioner present and by refusing to allow a "Willits" instruction.

> A prosecutor's actions constitute misconduct if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, [] (1986) ... The "appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" Id.... On habeas review, constitutional errors of the "trial type," including prosecutorial misconduct, warrant relief only if they "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637–38, 113 S.Ct. 1710, [] (1993) (internal quotation marks omitted).

Wood v. Ryan, 693 F.3d 1104, 1113 (9th Cir. 2012) (some internal citations omitted). "Even when separately alleged incidents of prosecutorial misconduct do not independently rise to the level of reversible error, the cumulative effect of multiple errors can violate due process. Id. at 1116-17 (internal citation and quotation marks omitted).

1
2
3
4
5
6
7
8
9
10
11
12
13

During the severance hearing, Melissa stated that part of why she was afraid of Petitioner prior to the alleged assault was because Petitioner told her that his roommate had told others Petitioner had raped a sixteen-year-old girl and "pulled a knife" on someone.  During the prosecutor's opening statement at Petitioner's trial the prosecutor stated: "defendant was making comments to [Melissa] about how his roommate would tell other people that he had raped someone."  Answer, Exh. T at 24.  Defense counsel objected, a bench conference ensued, and defense counsel argued for a mistrial, which motion was denied.  When the prosecutor resumed opening argument, they stated that, when Melissa and Petitioner were together, Petitioner told Melissa that his roommate had been "saying things" about Petitioner to others, and that this statement by Petitioner had put Melissa "a little on edge."  Id. at 24-25.  After opening statements, the prosecution never introduced testimony regarding this statement by Petitioner at trial, and the statement was not mentioned again during the trial.

14
15
16
17
18
19
20
21

In Petitioner's direct appeal he asserted that this constituted prosecutorial misconduct.  The Arizona Court of Appeals found that the prosecution's mention of this hearsay was "brief" and did not so infect Petitioner's trial with error and prejudice to warrant reversal.  The state appellate court's decision was not clearly contrary to nor an unreasonable application of law.  See Jones v. Ryan, 691 F.3d 1093, 1106 (9th Cir. 2012), citing Smith v. Phillips, 455 U.S. 209, 219, 102 S.Ct. 940, 947 (1982); Runningeagle, 686 F.3d at 781-82.  Compare Dow v. Virga, 729 F.3d 1041, 1051-52 (9th Cir. 2013); Wood v. Ryan, 693 F.3d 1104, 1114 (9th Cir. 2012).

22
23
24
25
26
27
28

With regard to Petitioner's claim that the prosecutor committed misconduct by allowing a jury question to be answered without Petitioner present, Petitioner did not properly exhaust this claim by raising it in his direct appeal and, accordingly, the claim is procedurally defaulted.  Petitioner did assert in his Rule 32 action that he was denied his right to the effective assistance of counsel because his counsel was not present during the jury deliberations.  Petitioner has not shown cause for any procedural default of this prosecutorial misconduct claim nor prejudice arising from the claim.  Prejudice cannot be shown because the legal underpinning of the claim is without merit.

This claim is without merit because substitute defense counsel was present at the time the trial judge and the prosecutor discussed the questions submitted by the jury during deliberations and substitute defense counsel waived Petitioner's presence at the conference where the jury questions were discussed.  Because Petitioner was represented at the hearing by counsel and counsel could legitimately waive Petitioner's presence, there was no misconduct on the part of the prosecutor or trial court.   Neither was Petitioner's right to due process violated by his absence from the conference wherein the jury questions were discussed.

> [W]e hold that defendant was not deprived of due process by his absence from the jury instruction conference. The jury instruction conference traditionally encompasses purely legal issues and, as such, it will be a rare case where a defendant can establish that his presence was essential to his opportunity to present his defense. Typically, the jury instruction conference is attended only by the judge and counsel. Normally the parties are not present. In the instant appeal, petitioner's absence at the jury instruction conference did not violate due process.

Larson v. Tansy, 911 F.2d 392, 395 (10th Cir. 1990).  See also United States v. Sherman, 821 F.2d 1337, 1339 (9th Cir.1987) (holding that the right of criminal defendants to be present at all critical stages of trial does not extend to conferences dealing only with the legal questions involved in formulating proper jury instructions).

There is no Supreme Court precedent which supports the proposition that a defendant has a "fundamental right" to be present when the trial court responds to a jury's question, which would require a criminal defendant to himself publically acknowledge its waiver. See New York v. Hill, 528 U.S. 110, 114–15, 120 S. Ct. 659, 663-64 (2000) (identifying only right to plead not guilty and right to counsel among fundamental rights that cannot be waived by counsel absent defendant's public acknowledgment of waiver); Florida v. Nixon, 543 U.S. 175, 187-88, 125 S.Ct. 551, 560 (2004).  See also Crockett v. Hulick, 542 F.3d 1183, 1189 (7th Cir. 2008).  Compare United States v. Gagnon, 470 U.S. 522,  526-27, 105 S.Ct. 1482, 1484-85 (1985) (finding no constitutional error where defense counsel was not present for in camera examination

of juror); United States v. Rosales-Rodriguez, 289 F.3d 1106, 1110 (9th Cir. 2002) (finding harmless error where defense counsel was not present for preparation and delivery of supplemental jury instruction); United States v. Gomez, 67 F.3d 1515, 1528 (10th Cir. 1995).

The state court's decision that Petitioner was not subjected to prosecutorial misconduct was not clearly contrary to nor an unreasonable application of federal law. Accordingly, Petitioner is not entitled to habeas relief on this claim.

**4.   Petitioner asserts that his right to a fair trial, his right to confront witnesses, and his right to due process of law were violated by the trial court's denial of his motion to sever the counts against him into separate trials (Ground 7).**

Petitioner maintains, "[T]he combined effect of the errors which arose from the severance denial and subsequent treatment of the charges as 'other acts,' rendered the trial fundamentally unfair and the defense less persuasive than it otherwise would have been."

The state trial court denied the motion to sever counts after a hearing at which all three victims testified but Petitioner did not testify.  In Petitioner's direct appeal he argued that the denial of the motion to sever counts violated Arizona state criminal rules and his federal constitutional rights.  The Arizona appellate court concluded that the denial of the motion was not in violation of any state rule and that Petitioner had waived a federal constitutional claim by not presenting it to the state court prior to trial or at the close of evidence.   See Answer, Exh. T.  Accordingly, the state court determined, Petitioner was not entitled to relief on this claim unless the court found "fundamental error".  After examining the proceedings and the trial court's decision denying the motion to sever, the appellate court found the trial court did not err in denying the motion.

It is arguable if it could be determined that the state court's decision was clearly contrary to or an unreasonable application of federal law, *inter alia*, because the United States Supreme Court has never squarely held that a trial court's failure to provide separate trials on different charges implicates the defendant's right to due process of law. Cf. Collins v. Runnels, 603 F.3d 1127, 1132 (9th Cir. 2010) (rejecting the petitioner's

argument that <u>United States v. Lane</u>, 474 U.S. 438, 106 S.Ct. 725 (1986), provides "clearly established federal law" governing a state court's denial of a motion to sever the trials of defendants).[6] "[I]t cannot be said that a state court unreasonably applied clearly established Federal law" when Supreme Court precedent "give[s] no clear answer to the question presented." <u>Wright v. Van Patten</u>, 552 U.S. 120, 126, 128 S.Ct. 743, 747 (2008) (internal quotation marks and alterations omitted).

> This series of cases tells us that in order to determine whether a state court failed to apply "clearly established Federal law, as determined by the Supreme Court" for purposes of § 2254(d)(1), we must distinguish between situations where a legal principle established by a Supreme Court decision clearly extends to a new factual context (as in <u>Panetti</u>) and where it does not (as in <u>Musladin</u> and <u>Van Patten</u>). When engaging in this line-drawing exercise, we have noted that a state court must apply legal principles established by a Supreme Court decision when the case "falls squarely within" those principles, but not in cases where there is a "structural difference" between the prior precedent and the case at issue, or when the prior precedent requires "tailoring or modification" to apply to the new situation. <u>Smith v. Patrick</u>, 508 F.3d 1256, 1259–60 (9th Cir. 2007). We have acknowledged that this series of Supreme Court cases "underscores that § 2254(d)(1) tightly circumscribes the granting of habeas relief." <u>Crater v. Galaza</u>, 491 F.3d 1119, 1123 (9th Cir.2007).
>
> In light of <u>Musladin</u>, <u>Panetti</u>, and <u>Van Patten</u>, we conclude that when a Supreme Court decision does not "squarely address[ ] the issue in th[e] case" or establish a legal principle that "clearly extend[s]" to a new context to the extent required by the Supreme Court in these recent decisions, <u>Van Patten</u>, 128 S.Ct. at 746, 745, it cannot be said, under AEDPA, there is "clearly established" Supreme Court precedent addressing the issue before us, and so we must defer to the state court's decision. If the Court's decisions do provide a "controlling legal standard," <u>Panetti</u>, 127 S.Ct. at 2858, that is applicable to the claims raised by a habeas petitioner without "tailoring or modification" of the standard, <u>Patrick</u>, 508 F.3d at 1260, the question is then whether the application of that standard was objectively unreasonable, even if the facts of the case at issue are not identical to the Supreme Court precedent. <u>See Panetti</u>, 127 S.Ct. at 2858.

---

[6]  The Supreme Court suggested in dicta in <u>Lane</u> that misjoinder could rise "to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." A federal court has concluded that "no Supreme Court cases hold[] that a defendant ... has a constitutional right to a separate trial on each of the charges against him." <u>Rodriguez v. Jones</u>, 625 F. Supp. 2d 552, 560–61 (E.D. Mich. 2009).

Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009).

The Ninth Circuit Court of Appeals has stated:

> We may grant habeas relief on a joinder challenge only "if the joinder resulted in an unfair trial. There is no prejudicial constitutional violation unless 'simultaneous trial of more than one offense ... actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process.'" Sandoval v. Calderon, 241 F.3d 765, 771-72 (9th Cir. 2001),.... The requisite level of prejudice is reached only "if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." Sandoval, 241 F.3d at 772 (citing Bean v. Calderon, 163 F.3d 1073, 1086 (9th Cir.1998)). In evaluating prejudice, the Ninth Circuit focuses particularly on cross-admissibility of evidence and the danger of "spillover" from one charge to another, especially where one charge or set of charges is weaker than another. See, e.g., Sandoval, 241 F.3d at 772; Bean, 163 F.3d at 1084.

Davis v. Woodford  384 F.3d 628, 638 (9th Cir. 2004) (some internal citations omitted). See also Sandoval v. Calderon, 241 F.3d 765, 771–72 (9th Cir. 2001) ("On habeas review of a prisoner's challenge to a trial court's failure to sever trial of some counts in an indictment, we may only grant the writ if the joinder resulted in an unfair trial."); Coley v. Bagley, 706 F.3d 741, 753 (6th Cir. 2013)[7].

Additionally, a petitioner who argues that simultaneous trial on one count had an inflammatory influence on the jury's ability to handle the other count must show that the jury was actually inflamed.  See Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000). Petitioner's allegation that the jury was actually inflamed is belied by the jury's finding of not guilty on the counts involving one of the victims.

---

[7] Misjoinder is not per se unconstitutional, but rises to that level if it results in prejudice so great as to deny a defendant his due process right to a fair trial. See United States v. Lane, 474 U.S. 438, 446 n.8, 106 S.Ct. 725, [] (1986). The harmless-error rule governs. See id. at 446, 106 S.Ct. 725. In federal habeas proceedings, we ask whether the error had "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, [] (1993) (internal quotation marks omitted); see also Fry v. Pliler, 551 U.S. 112, 121–22, 127 S.Ct. 2321, [] (2007). "[A] risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible." Davis v. Coyle, 475 F.3d 761, 777 (6th Cir. 2007).

Because the Arizona Court of Appeals' decision that denial of the motion to sever counts was not clearly contrary to nor an unreasonable application of federal law, Petitioner is not entitled to habeas relief this claim.

**5.   Petitioner contends that the trial court erred in instructing the jury with regard to the state's burden of proof (Ground 8)**

Petitioner argues that the trial court's reasonable-doubt instruction "lowered the State's burden of proof in violation of the 5th and 14th Amendments" and deprived him of "Due Process, as guaranteed by the Fourteenth Amendment, and his right to trial by jury in violation of the 6th and 14th Amendments," because, he asserts, "the court defined reasonable doubt using language describing clear and convincing evidence." Doc. 15 (amended petition) at 49.

The challenged reasonable-doubt instruction states:

The state has the burden of proving the defendant guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not or that its truth is highly probable. In criminal cases such as this, the state's proof must be more powerful than that. It must be beyond a reasonable doubt.
Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every doubt.
If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find the defendant guilty. If, on the other hand, you think there is a real possibility that the defendant is not guilty, you must give him the benefit of the doubt and find the defendant not guilty.

Answer, Exh. N at 39-40.

In his direct appeal, Petitioner argued that these instructions reduced the reasonable-doubt standard to a "clear and convincing" evidence standard, because the Arizona Supreme Court had previously stated that "a 'firm belief or conviction' is truer to the clear and convincing evidence standard than a definition equating clear and convincing with 'certain, plain, [and] unambiguous' evidence." Answer, Exh. Q at 35-36.

When reviewing a jury instruction regarding reasonable doubt, a habeas court must determine "whether there is a reasonable likelihood that the jury [ ] applied the challenged instruction in a way that violates the Constitution." Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 482 (1991). See Leavitt v. Arave, 383 F.3d 809, 818 (9th Cir. 2004). "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243 (1994). The Ninth Circuit Court of Appeals has instructed the reviewing habeas court to "determine whether there was a reasonable likelihood that the jury understood the instruction to allow a conviction predicated on proof that was insufficient to meet the requirements of due process." Lisenbee v. Henry, 166 F.3d 997, 999 (9th Cir. 1999).

> In evaluating the constitutionality of the jury charge, we must determine "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet" the requirements of due process. Victor, 511 U.S. at 6, 114 S.Ct. at 1243. If we find such a likelihood, then we must grant [the] writ of habeas corpus; there can be no harmless error in this context. ...'

Ramirez v. Hatcher, 136 F.3d 1209, 1211 (9th Cir. 1998)

> A jury instruction cannot relieve the state of the burden of proving beyond a reasonable doubt a crucial element of the criminal offense. In Sandstrom v. Montana, 442 U.S. 510, 521, 99 S.Ct. 2450, [] (1979), the Supreme Court held the proper inquiry to be "whether the challenged jury instruction had the effect of relieving the State of the burden of proof ... on the critical question of petitioner's state of mind." If a "reasonable juror could have given the presumption conclusive or persuasion-shifting effect," the instruction is unconstitutional. Id. at 519. In Francis v. Franklin, 471 U.S. 307, 325, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the Supreme Court held that an instruction was unconstitutional "[b]ecause a reasonable juror could have understood the challenged portions of the jury instruction in this case as creating a mandatory presumption that shifted to the defendant the burden of persuasion on the crucial element of intent[.]" We have held that to determine whether a jury instruction unconstitutionally shifts the burden of proof, we must inquire " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction' in an unconstitutional

manner." <u>Houston</u>, 177 F.3d at 909 (citations and quotations omitted).

   In both <u>Sandstrom</u> and <u>Francis</u>, the Supreme Court held jury instructions invalid for unconstitutionally shifting the burden of proof. In <u>Sandstrom</u>, the defendant admitted killing the victim but contended that he did not have the required mental state. If the defendant had acted "purposely or knowingly," he would have been guilty of "deliberate homicide" under Montana law; but if he had acted without that mental state, he would have been guilty of a lesser degree of homicide. After having been instructed that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," the jury convicted defendant of "deliberate homicide." <u>Sandstrom</u>, 442 U.S. at 513, 99 S.Ct. 2450. The Supreme Court held that the instruction violated due process.

<u>Patterson v. Gomez</u>, 223 F.3d 959, 962-63 (9th Cir. 2000). "All challenged instructions", however, must be "considered in light of all of the jury instructions and the trial record as a whole." <u>Mendez v. Knowles</u>, 556 F.3d 757, 768 (9th Cir. 2009), <u>citing</u> <u>Cupp v. Naughten</u>, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400 (1973).

Petitioner argues that "[t]he jury was never instructed on [the definition of] clear and convincing evidence, allowing it to consider the evidence of actual charged crimes without guidance in violation of the 5th, 6th, and 14th Amendments." Doc. 15 at 46. However, as noted by Respondents, the term "clear and convincing evidence" appeared in a single jury instruction, which provided:

> Evidence of sexual misconduct has been presented. [Evidence to rebut this has also been presented.] You may consider this evidence in determining whether the defendant had a character trait that predisposed him to commit the crimes charged. You may determine that the defendant had a character trait that predisposed him to commit the crimes charged only if you decide that the State proved by clear and convincing evidence that:
> 1. The defendant committed these acts; and
> 2. These acts show the defendant's character predisposed him to commit abnormal or unnatural acts.
> You may not convict the defendant of the crimes charged simply because you find that he committed these acts, or that he had a character trait that predisposed him to commit the crimes charged. Evidence of these acts does not lessen the State's burden to prove the defendant's guilt beyond a reasonable doubt.

Answer, Exh. A at 15 & Exh. N at 42-43.

Before defining the governing reasonable-doubt standard, the court charged the jury:

> The State has the burden of proving the defendant guilty beyond a reasonable doubt. This means that the State must prove each element of each charge beyond a reasonable doubt.
>
> In civil cases, it is only necessary to prove that a fact is more likely true than not or that its truth is highly probable. In a criminal case such as this, the State's proof must be more powerful than that. It must be beyond a reasonable doubt.

Id., Exh. N at 39.

The trial court's voluntary-act instruction stated, "Before you may convict the defendant of the charged crimes, you must find that the State proved *beyond a reasonable doubt* that the defendant committed a voluntary act." Id., Exh. N at 41 (emphasis added.) Regarding the legal effect of Petitioner's not-guilty plea, the court stated, "This plea of not guilty means that the State must prove each element of the charges *beyond a reasonable doubt*." Id., Exh. N at 41 (emphasis added). Before reciting the elements of Petitioner's charged offenses, the court told the jury, "You may find that the State has proven *beyond a reasonable doubt* all, some, or none of the charged offenses." Id., Exh. N at 43 (emphasis added). The last paragraph of the limiting instruction referencing the "clear and convincing evidence" standard admonished the jury:

> You may not convict the defendant of the crimes charged simply because you find that he committed these acts, or that he had a character trait that predisposed him to commit the crimes charged. Evidence of these acts does not lessen the State's burden to prove the defendant's guilt beyond a reasonable doubt."

Id., Exh. N at (emphasis added).

In denying relief on this claim, the Arizona Court of Appeals stated:

> Defendant maintains that the trial court violated his constitutional rights by instructing the jury on "reasonable doubt" according to State v. Portillo, 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995). Our supreme court recently reaffirmed that instruction in State v. Garza, 216 Ariz. 56, 66-67, ¶ 45, 163 P.3d 1006, 1016-17 (2007). The courts of this state are bound by the decisions of our supreme court and have no authority to overrule those

decisions. <u>State v. Foster</u>, 199 Ariz. 39, 41 n.1, ¶ 9, 13 P.3d 781, 783 n.1 (App. 2000). Defendant has failed to prove that the trial court committed any error in its reasonable doubt instruction, let alone fundamental error.

Answer, Exh. T at 28-29.

Because the challenged instruction, in the context of all of the instructions given to the jury did not have the effect of relieving the state of the burden of proof, the state appellate court's conclusion that Petitioner's right to due process and a fair trial were not violated by the jury instructions was not clearly contrary to nor an unreasonable application of federal law.  See <u>Schultz v. Tilton</u>, 659 F.3d 941, 943-44 (9th Cir. 2011); <u>Rhoads v. Henry</u>, 638 F.3d 1027, 1044-45 (9th Cir. 2011).  <u>Compare</u> <u>Dixon v. Williams</u>, 750 F.3d 1027, 1031-33 (9th Cir. 2014) .

**III Conclusion**

The Arizona Court of Appeals' determination that Petitioner was not denied his federal constitutional rights based on the denial of his motion to sever counts, based on prosecutorial misconduct, and based on his contention that the jury instructions improperly shifted the burden of proof, were not clearly contrary to nor an unreasonable application of federal law.  The Arizona courts' conclusion that Petitioner was not denied his right to the effective assistance of counsel was not clearly contrary to nor an unreasonable application of federal law because, *inter alia*, Petitioner has not established prejudice arising from any alleged error of counsel.

**IT IS THEREFORE RECOMMENDED that** Mr. Husband's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have

fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues.  See United States v. Reyna–Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right.

Dated this 4th day of November, 2014.


_____
Mark E. Aspey
United States Magistrate Judge