# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sean Patrick Husband,<br><br>             Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>             Respondents. | No. CV 13-01320-PHX-DLR (DMF)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE DOUGLAS L. RAYES**:

Petitioner Sean Patrick Husband filed a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) on July 1, 2013, and filed an Amended Petition (Doc. 15) on December 18, 2013. Respondents answered the amended petition (Docs. 25, 26). Magistrate Judge Mark E. Aspey issued a Report and Recommendation ("R&R") on November 4, 2014 (Doc. 41), recommending that the Amended Petition be denied and dismissed with prejudice. The Court entered an order adopting the R&R (Doc. 50) and Petitioner filed a Motion for Reconsideration, Motion to Vacate Judgment or, Alternatively, Motion for Extension of Time (Doc. 52). After oral argument on May 13, 2015, the Court granted Petitioner's Motion and ordered Petitioner to file his objection and ordered Respondents to respond to the objection.

The Court found that additional briefing was necessary on Petitioner's claims and objections as to Grounds One and Six of his Amended Petition. The Court ordered the briefing to address Petitioner's claims regarding an irreconcilable conflict/fractured

relationship with his trial attorney, and to address Respondents' argument that these claims are procedurally defaulted. (Doc. 66 at 1–2.) The Court appointed the Federal Public Defender to represent Petitioner. After briefing by both parties, the Court held oral argument on February 4, 2016. At the oral argument, Petitioner sought for the first time to amend the Petition to include a claim of ineffective assistance of appellant counsel pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). The Court ordered briefing on the issue. (Doc. 79.) Petitioner filed his Supplemental Brief on the Applicability of *Martinez v. Ryan* on February 18, 2016 (Doc. 81); Respondents filed their Response to Petitioner's Supplemental Brief Re: the Inapplicability of *Martinez v. Ryan* on March 28, 2016 (Doc. 87); and Petitioner filed his Reply Brief (Doc. 89) on April 15, 2016. The District Judge referred the issues in the supplemental briefing regarding the applicability of *Martinez v. Ryan* to the undersigned Magistrate Judge for a Report and Recommendation (Doc. 88).

**I.     Background**

A Maricopa County grand jury indictment returned November 28, 2005, charged Petitioner with three counts of sexual assault and three counts of sexual abuse. (Doc. 25–1 at 10–12.) On December 3, 2005, Petitioner informed the state court that he was not indigent and his retained counsel, David J. Wolf, entered an appearance on behalf of Petitioner. (*Id.* at 20–21.) On December 9, 2005, Michael Freeman ("Freeman"), an attorney with Wolf & Associates, Mr. Wolf's law firm, entered an appearance on behalf of Petitioner.

On November 28, 2006, the date set for Petitioner's trial, Petitioner moved (on his own, not through counsel) to replace attorney Freeman and to continue his trial pending his retention of new counsel. (Doc. 25–2 at 3.) A hearing on the motion was conducted that same day, and the motion to change counsel and to continue the trial was denied at the conclusion of the hearing. The trial judge gave Petitioner, attorney Freeman, and the State's attorney an opportunity to respond to the motion. The State's attorney objected to continuing the trial. (*Id.* at 246.) Freeman stated that:

> Mr. Husband and I have had problems working together for sometime. I told him before that he wants to essentially represent himself, or get other counsel. Yesterday he wanted to do the opening statements. He wants to do closing arguments, and he was very unhappy with my questioning yesterday, feeling that I'm leaving out major issues. There's been an ongoing antagonistic relationship between what he thinks should be done, and what I believe should be done. Some of it is material. It doesn't go to ethical. We can't work together. We haven't been working together. I think he wants—he didn't hire me. He hired the firm of Wolf and Associates. The year before I wasn't with the firm. He started to hire me before because I had my own private practice. I probably wouldn't have taken the case. Based on different statements he's made in the posture of the case as well. But I'm also employed by the firm, they wanted me to try it. If Mr. Husband wants to terminate me, that's fine with me. I think in some ways that's to his advantage, so—I believe he does want to have additional time to hire other counsel.

(Doc. 25–2 at 225–226.)  In response to the trial judge's inquiry as to whether or not Freeman could still represent Petitioner to the best of his ability and whether or not he was prepared to go to trial that day, Freeman answered:

> I can represent him to the best of my ability, but there are major differences that we have. I think another attorney could represent Mr. Husband's interests better. I'm not sure that my representation is in Mr. Husband's best interest. . . . I would be prepared to go to trial today. Mr. Husband is in custody. He's being held without bond. I believe he indicates he does want to hire other counsel. He would want additional time. He and his mother have the funds to hire other counsel.

(*Id*. at 226–227.)

Petitioner addressed the timing of his motion, noting that the motions hearing was the previous day.  Petitioner stated that:

> Up to this point I had been working with Michael Freeman. I didn't think we had quite a contentious relationship. However, I was under the impression that a number of things would happen at this hearing. . . . I haven't had a visit this entire month. I figured maybe things will go the way I wanted. You know, I'm not inflexible. I had dialogues with him. I was under the impression through mutual dialogue, without mutual dialogue, things would go one way, and they didn't. . . . I didn't have any statistics or prior experience up to this point on how Michael Freeman would handle himself when he was faced with logistics and questioning,

- 3 -

      and what not.  And while he always a skillful orator, I think in a case like this it really comes down to the grind.

(*Id*. at 230–231.)  Petitioner expressed his dissatisfaction with the amount of work Freeman had put into the case, including his failure to depose or interview Detective Hall. Freeman indicated that he had not interviewed the two officers, including Detective Hall, on Melissa A.'s case, and that the investigator hired by Petitioner was doing the interviews.  Freeman added in reference to Petitioner that:

      I don't think we have the relationship between ourselves that would make for effective assistance of counsel at this time.  I read this motion in a little more detail.  And I think that—especially where he's likely to testify that relationship is necessary.  So I don't believe that I would be effective based on our relationship.

(*Id*. at 234.)

      During the hearing, Freeman acknowledged that he had not met with Petitioner in the month preceding the trial, but indicated he had talked with him over the phone. (*Id*. at 243.)  Freeman noted that he had not met with Petitioner as much as Petitioner had wanted, and that Petitioner had sent him over 70 pages of questions or comments and that he had "not sent him anywhere near the answers he has wanted." (*Id*. at 243.)  Freeman stated that he didn't think he and Petitioner had "the relationship that he wants with an attorney, to have confidence in the attorney.  I certainly don't have confidence in him.  I have certainly told people I prefer not to be on this case, just because of the relationship that I have with Mr. Husband." (*Id*. at 244.)

      In denying the motion, the trial judge noted that the motion to terminate counsel came after a somewhat unsuccessful motions hearing the prior day, and that Petitioner's counsel would have the opportunity to talk to Detective Hall before she testifies. (*Id*. at 238–239.)

      The jury convicted Petitioner on four counts and acquitted him on two charges, and Petitioner was sentenced on February 2, 2007.  (Doc. 25–5 at 232–233, 240.) Petitioner filed a timely direct appeal of his convictions and sentences.  Petitioner retained private counsel, Thomas J. Phalen ("Phalen"), to represent him in his direct

appeal. On direct appeal, Petitioner asserted, among other claims, that the trial court committed structural error when it deprived Petitioner of his 6th and 14th Amendment right to counsel of his choice. The Arizona Court of Appeals affirmed Petitioner's convictions and sentences in a decision issued September 4, 2008. (Doc. 25–7 at 47–78; *see also* 2008 WL 4152841.) The Arizona Supreme Court summarily denied review on February 10, 2009. (Doc. 25–8 at 126.)

Petitioner initiated a timely action for state post-conviction relief ("PCR") pursuant to Rule 32, Arizona Rules of Criminal Procedure. Petitioner was again represented by retained private counsel Phalen in his Rule 32 action, and asserted that his trial counsel rendered ineffective assistance of counsel ("IATC") in violation of the 6th and 14th Amendments, by providing deficient performance under the test set forth in *Strickland v. Washington*. (Doc. 25–8 at 128; Doc. 25–9 at 9, 12.) The deficient performance was based on trial counsel's failures during trial, largely resulting from the conflict between trial counsel and Petitioner. *Id.* In a supplemental pleading Petitioner argued an additional subclaim to his IATC claim—that Freeman provided IATC for failing to plead or argue he was denied his right to confront the witnesses against him because Petitioner's counsel was not allowed to cross-examine a victim-witness regarding a prior experience of alleged sexual assault. (Doc. 25–9 at 165–167.) However, Phalen did not raise a claim of irreconcilable conflict between Petitioner and trial counsel, nor did he raise any claims of ineffective assistance of appellate counsel ("IAAC"), which was Phalen himself, for failure to raise the irreconcilable conflict claim on direct appeal.

The state trial court denied relief on May 21, 2010, summarily finding that Petitioner had failed to establish a colorable claim for relief based on IATC and that Petitioner's claim regarding the cross-examination of a witness was precluded by the failure to raise the issue in his direct appeal. (Doc. 25–9 at 208–209.) Petitioner appealed the trial court's decision regarding his IATC claims but did not seek review of the trial court's ruling that his confrontation-clause claim was precluded pursuant to Rule 32.2(a)(3), Arizona Rules of Criminal Procedure. On March 28, 2012, the Arizona Court

of Appeals summarily denied review of the trial court's decision denying state post-conviction relief.  (Doc. 26–3 at 32.)  The Arizona Supreme Court summarily denied review on September 25, 2012.  (Doc. 26–7 at 20.)

Petitioner initiated this action with a Petition filed on July 1, 2013 (Doc. 1), and Petitioner filed an Amended Petition Under 28 U.S.C. § 2254 (Doc. 15) on December 18, 2013.  In Ground One of the Amended Petition, Petitioner alleges as follows:

> INEFFECTIVE ASSISTANCE OF COUNSEL: CUMULATIVE PREJUDICE
> Husband was Denied his Right to Retain Counsel of Choice and Thereby Forced to Trial With Admittedly Deficient Counsel with Whom he had an Irreparably Fractured Relationship.  Predictably, This Resulted in Numerous Instances of Deficient Performance, the Cumulative Effect of Which Violated his Rights Under the 6th and 14th Amendments.

(Doc. 15 at 8.)  Petitioner alleges in Ground Six of the Amended Petition:

> COUNSEL OF CHOICE VIOLATION
> The Trial Court Committed Structural Error When it Deprived Husband of his 6th Amendment and 14th Amendment Right to Retain Counsel of his Choice, Thereby, Forcing him to Trial With Admittedly Deficient Counsel With Whom he had an Irreparably Fractured Relationship.

(Doc. 15 at 34.)

Magistrate Judge Aspey's R&R recommends a denial of relief on Grounds One and Six, after addressing the grounds as exhausted claims and finding that the Arizona Court of Appeals' decision denying Petitioner's choice of counsel claim was not clearly contrary to nor an unreasonable application of federal law.  (Doc. 41 at 19–22.)  The R&R also recommends a denial of Petitioner's various IATC claims that were raised in his PCR proceeding, finding that the state court's conclusion that none of the claims raised a colorable claim for relief was not contrary to nor an unreasonable application of federal law.  (*Id*. at 23–28.)

Petitioner's objection to the R&R alleged that the R&R failed to address his irreconcilable conflict claim.  (Doc. 57 at 12–14.)  Respondents allege that the claim was

- 6 -

never exhausted in state court because Petitioner's direct appeal only alleged that his Sixth Amendment right to counsel of choice was violated, not that he and Freeman had an irreconcilable conflict. (Doc. 62 at 10–12.) The Court ordered additional briefing (Doc. 66) and held oral argument on the irreconcilable conflict/fractured relationship claim and whether or not the claim was procedurally defaulted (Doc. 79). At oral argument, Petitioner argued for the first time to amend the Petition to include a claim of IAAC and that his procedural default was excused under *Martinez v Ryan*, 132 S. Ct. 1309 (2012). The Court ordered additional briefing regarding the applicability of *Martinez* and referred the issue of the applicability of *Martinez* to the undersigned for a Report and Recommendation.

**II.     Analysis**

Petitioner alleges that his relationship with Freeman, his retained trial counsel, at the time of trial constituted an irreconcilable conflict between an attorney and his client in violation of the Sixth Amendment. This irreconcilable conflict claim is a claim that Arizona law allows—if not requires—to be raised on direct appeal. *See State v. Gomez*, 293 P.3d 495, 500–02 (Ariz. 2012) (reviewing trail court's decision to deny a request for new counsel for abuse of discretion). Appellate counsel Phalen failed to raise the fractured relationship and irreconcilable conflict between Petitioner and Freeman on direct appeal. Instead, Phalen raised the Sixth Amendment violation that resulted from the trial court depriving Petitioner of choice of counsel. In the PCR proceedings, Phalen raised several IATC claims based on Freeman's failures during trial, but again did not raise a claim of irreconcilable conflict between Petitioner and Freeman, nor did he raise any IAAC claims for failure to raise the irreconcilable conflict claim on direct appeal. To raise any IAAC claims for failure to raise the irreconcilable conflict claim on direct appeal, Phalen would have had to raise the IAAC claim against himself.

Petitioner argues that Phalen provided IAAC on direct appeal for failing to raise the irreconcilable conflict claim and then subsequently provided ineffective assistance as PCR counsel for failing to address his IAAC or, implicitly, for failing to withdraw so that alternate post-conviction counsel could raise the claim. The parties dispute whether or

not *Martinez* provides an excuse for the procedural defaults, thereby allowing the Court to consider the merits of the underlying irreconcilable conflict claim.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Where there is a constitutional right to counsel, attorney error that constitutes ineffective assistance of counsel constitutes cause, because "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State." *Id.* at 753–54 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The Supreme Court in *Coleman* held that where there is no constitutional right to counsel, attorney error that led to the procedural default cannot constitute cause. *Coleman*, 501 U.S. at 757.

The Supreme Court in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), carved out an exception to the rule in *Coleman*:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance of counsel at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claims should have been raised, was ineffective under the standards of *Strickland v. Washington*.

*Id.* at 1318 (citations omitted). Also, the prisoner must also demonstrate that the underlying IATC claim is a substantial one, which is to say the claim has some merit. *Id.* (citation omitted).

The Supreme Court in *Trevino v. Thaler*, defined the *Martinez* exception to *Coleman* as "allowing a federal habeas court to find 'cause,' thereby excusing a defendant's procedural default, where (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or

- 8 -

only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim;" and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318–1319, 1320–1321). The Court in *Trevino* then expanded the fourth element to include situations where the "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 1921.

After *Trevino*, the Ninth Circuit in *Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013), held that the standard for "cause" articulated in *Martinez* and reaffirmed in *Trevino* applies in a cases where the underlying IAC is by appellate counsel rather than trial counsel. "The Sixth Amendment right to effective counsel applies equally to both the trial and appellate counsel." *Id.* at 1293. In *Nguyen*, appellate counsel failed to inform the Petitioner of his right to and the requirement that he file a post-conviction petition in the California state court before filing a federal petition for habeas corpus. *Id*. at 1290. Nguyen, thus, filed a petition for habeas corpus in federal court without filing a petition for post-conviction relief in the California state court. In the federal habeas case, the federal court found that Nguyen had two potentially meritorious claims, one being that his appellate counsel was ineffective based on failure to raise a double jeopardy claim. *Id*. at 1291. The federal case was stayed to give Nguyen an opportunity to raise his unexhausted potentially meritorious claims in a petition for post-conviction relief in the California state courts. *Id*. The state court petition was denied as untimely, and before the United States Supreme Court decided *Martinez*, the magistrate judge denied the federal habeas petition without prejudice, finding that Nguyen had not showed *Coleman* cause and prejudice for the two potentially meritorious claims, including ineffective assistance of appellate counsel based on the failure to raise the double jeopardy claim on direct appeal. *Id*.

Here, like in *Nguyen*, Petitioner's IAAC claim was procedurally defaulted. In both cases, Petitioner must rely on the ineffective assistance of his PCR counsel to establish the equitable "cause" exception established by *Martinez* for not raising the IAAC claim. The Ninth Circuit in *Nguyen*, held that "the *Martinez* standard for 'cause' applies to all Sixth Amendment ineffective-assistance claims, both trial and appellate, that have been procedurally defaulted by ineffective counsel in the initial-review state-court collateral proceeding." *Id*. at 1295. This holding applies in equal force where in Nguyen, there was no counsel for a post conviction state proceeding and here, where the counsel for the post-conviction state proceeding was unable to raise the ineffective assistance of appellate counsel claim in the PCR because appellate and PCR counsel were one and the same.

Respondents argue in opposition to *Nguyen*'s extension of the Martinez exception (Doc. 87 at 4), but this Court is bound by *Nguyen*. Respondents also argue that this case is distinguishable from *Nguyen* and *Martinez*, because Arizona law allows for a second PCR when appellate and first PCR counsel are one and the same. (Doc. 87 at 5, 11.) Respondents correctly point out that a second PCR is the first realistic opportunity (is the initial review stage) to raise IAAC when appellate counsel and PCR counsel are one and the same. *See State v. Bennett*, 146 P.3d 63, 67 (Ariz. 2006) (holding that "the second post-conviction relief petition, in which Bennett was represented by different counsel, was the first proceeding in which she could raise the ineffective assistance of appellate counsel argument . . . [t]herefore Rule 32.2.a(3) does not preclude Bennett's ineffective assistance of counsel claim). Yet, Respondents are incorrect in asserting that Petitioner, if indigent, was entitled to court appointed counsel for the second PCR. *See* Rule 32.4(c)(2) ("Upon the filing of all other notices in non-capital cases, the appointment of counsel is within the discretion of the presiding judge."); *Osterkamp v. State of Arizona*, 250 P.3d 551, 556 n.4 (Ariz. App. 2011) (non-pleading defendant would be entitled to counsel in a second, timely filed post-conviction proceeding only if a notice is filed before the appeal is resolved and another notice is filed after the appeal is concluded). Without the right to court appointed counsel if indigent, the second PCR argument falls

short of preventing the *Martinez* exception as interpreted by *Nguyen*. Although Petitioner did not initiate a second PCR proceeding (which would have amounted to the initial collateral review proceeding for ineffective assistance of appellate counsel and for which there is no right to counsel for a non-pleading defendant), the petitioner in *Nguyen* did not initiate an initial PCR proceeding before his federal habeas action. Therefore, Respondents cannot persuasively argue that Petitioner's failure to take advantage of an opportunity to present the IAAC claim to the state court is fatal procedural default to federal habeas relief. As the Supreme Court stated in *Martinez* about its announced equitable rule exception to *Coleman*:

> An equitable ruling, by contrast [to a constitutional rule], permits States a variety of systems for appointing counsel in initial-review collateral proceedings. And it permits a State to elect between appointing counsel in initial-review collateral proceedings or not asserting a procedural default and raising a defense on the merits in federal habeas proceedings.

Id. at 1320.

Respondents argue that because Petitioner did not raise any IAAC claims as grounds for habeas relief, the ineffectiveness of his PCR counsel cannot constitute cause to excuse the procedural default of the IAAC claim. (Doc. 87 at 4.) Respondents argue that *Nguyen* only held that the ineffectiveness of PCR counsel may constitute cause excusing the procedural default of an IAAC claim *raised as a ground for habeas relief. Id.* (citing *Nguyen*, 736 F.3d at 1289) (emphasis added). However, Petitioner has requested leave to amend his habeas petition to include IAAC and ineffective assistance of PCR counsel claims. (Doc. 89 at 5.) The Court in *Nguyen* addressed the issue of amending the petition to add the IAAC claim and found that the IAAC claim would relate back to the filing of the petition under Fed. R. Civ. P. 15(c). *Id*. at 1297 (finding that the "time and type" language refers not to the claims or grounds for relief, but rather to the facts that support those grounds).

The Court in *Nguyen* noted that the Court's "central point in *Martinez* is that a 'substantial' IAC claim deserves one chance to be heard on initial review in a state postconviction proceeding." *Nguyen*, 736 F.3d at 1294. Further, "[i]f a procedural

default by an ineffective postconviction counsel forfeits an underlying trial-counsel or an appellate-counsel IAC claim, no court will ever hear that underlying IAC claim." *Id*. The *Martinez* exception, as applied in *Nguyen*, addresses this injustice.

To find that the *Martinez* exception as applied in *Nguyen* does not apply here would be a nonsensical result. Both *Martinez* and *Nguyen* regarded ineffective PCR counsel failing to raise an underlying constitutional ineffective assistance of counsel claim; in *Martinez*, IATC, while in *Nguyen*, IAAC. Here, like both *Martinez* and *Nguyen*, there is also an ineffective PCR counsel failing to raise a constitutional ineffective assistance of counsel claim. The ineffective assistance cause in *Nguyen* at the PCR stage was not being advised of state PCR existence; here, the PCR ineffective cause is even greater because the appellate counsel should have declined to be PCR counsel so that a different attorney could evaluate whether or not appellate counsel provided effective assistance of counsel. Further, in this case, had attorney Phalen advised Petitioner of the right to a second PCR, it would not have been enough to cure the problems from Phalen's dual representation in the appeal and the first PCR because of the lack of the right of appointed counsel in Arizona for a second PCR for a non-pleading defendant. *See Runningeagle v. Ryan*, ___ F.3d ___, 2016 WL 3213095, at *9 (9th Cir. June 10, 2016) ("As in *Trevino*, there is no principled reason why federal law should 'deny defendants the benefit of *Martinez* solely because of the existence of a theoretically available procedure . . .,' which is 'difficult, and in the typical case all but impossible, to use successfully, and which [Arizona] courts so strongly discourage defendants from using.") (citation omitted).

Undersigned recommends that *Martinez* be applied to the procedural defaults of Petitioner's IAAC claim and his irreconcilable conflict claim. Therefore, Petitioner should have the opportunity to show "cause" and "prejudice" for the procedural defaults. "To demonstrate cause and prejudice sufficient to excuse the procedural default," Petitioner must show:

> First, to establish "cause," he must establish that his counsel in the state postconviction proceeding was ineffective under the standard of *Strickland*.

> *Strickland*, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694, 104 S. Ct. 2052. Second, to establish "prejudice," he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318.

*Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014).

"Section 2254(e) . . . does not bar a hearing before the district court to allow a petitioner to show 'cause' under *Martinez*" because a claim of ineffective assistance of PCR counsel is not a "claim" for relief under § 2254(e)(2), but rather it is asserted as an equitable basis to excuse the procedural default. *Dickens v. Ryan*, 740 Fl.3d 1302, 1321 (9th Cir. 2014). Therefore, Petitioner should be afforded a hearing to establish "cause" and "prejudice" as set forth in *Clabourne*. In this case, Petitioner must show that the IAAC claim, and then the irreconcilable conflict claim, are substantial—meaning the claims have some merit.

"The Sixth Amendment does not guarantee a 'meaningful relationship' between a client and his attorney." *Stenson v. Lambert*, 504 F.3d 873, 885–86 (9th Cir. 2007) (citing *Morris v. Slappy*, 461 U.S. 1, 14 (1983)). "However, forcing a defendant to go to trial with an attorney with whom he has an irreconcilable conflict amounts to constructive denial of the Sixth Amendment right to counsel." *Id.* (citing *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970)). "An irreconcilable conflict in violation of the Sixth Amendment occurs only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel." *Id.* (citing *Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000)). "Disagreements over strategical or tactical decisions do not rise to level of a complete breakdown in communication." *Id.* The Court looks to three factors in determining whether a conflict rises to the level of "irreconcilable": "1) the extent of the conflict; 2) the adequacy of the inquiry by the trial court; and 3) the timeliness of the motion for substitution of counsel." *Id.* (citing *United States v. Moore*, 159 F.3d 1154, 1158–59 (9th

Cir. 1998)).

A trial court's inquiry on a motion to substitute counsel should be "such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern" and "should provide a 'sufficient basis for reaching an informed decision[ ]' regarding whether to appoint new counsel." *Id*. (citing *United States v. Garcia*, 924 F.2d 925, 926 (9th Cir. 1991) and *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir. 1986) overruled on other grounds by *United States v. Garrett*, 179 F.3d 1143 (9th Cir.1999)). The Ninth Circuit has held in extreme cases that a complete breakdown in communication may occur even where counsel is providing competent representation. 504 F.3d at 887 (citing *United States v. Nguyen*, 262 F.3d 998, 1003 (9th Cir. 2001); *United States. v. Musa*, 220 F.3d 1096, 1102 (9th Cir. 2000)). In *Nguyen*, 262 F. 3d at 1003, the trial court's inquiry focused "exclusively on the attorney's competence and refused to consider the relationship between Nguyen and his attorney." *Id.* The court's refusal to consider the relationship was significant in Nguyen because, by the time trial began, Nguyen was "left to fend for himself"; he could not confer with his attorney about trial strategy or evidence, or even get his attorney to explain the proceedings. *Id.* at 1004. No communication at all flowed between attorney and client. *Id.* A habeas petitioner who satisfies his or her burden and shows a serious conflict that resulted in a constructive denial of counsel need not make any further showing of prejudice. *Schell*, 218 F.3d at 1026.

**IT IS THEREFORE RECOMMENDED that** the Court order that Petitioner's habeas petition be amended, as requested by Petitioner's counsel (Doc. 89 at 5), to include IAAC and ineffective assistance of PCR counsel claims.

**IT IS FURTHER RECOMMENDED that** the Court find *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), applicable to excuse Petitioner's procedural defaults of his IAAC claim and his irreconcilable conflict claim in Grounds One and Six of his Amended Petition Under 28 U.S.C. § 2254 (Doc. 15).

**IT IS FURTHER RECOMMENDED that** the Court conduct a hearing to allow Petitioner to establish cause and prejudice for the procedural defaults.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties shall have fourteen days within which to file responses to any objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 21st day of June, 2016.

                Honorable Deborah M. Fine
                United States Magistrate Judge